UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
JEAN BAPTISTE MECCA,                        )
                                            )
            Petitioner,                     )
                                            )
v.                                          )         Civil No. 12-12015-JLT
                                            )
RONALD P. CORBETT, JR., et al.,             )
                                            )
            Respondents.                    )
_____)

REPORT AND RECOMMENDATION ON
PETITION FOR WRIT OF HABEAS CORPUS

December 18, 2013

SOROKIN, C.M.J.

        Petitioner Jean Baptiste Mecca, currently on probation following a state prison sentence,

has filed a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The

Respondents' motion to dismiss the petition as untimely was denied, Doc. No. 18, and the merits

of Mecca's claims now have been fully briefed, Doc. Nos. 34, 40.  For the reasons that follow, I

recommend the habeas petition be DENIED.

I.      BACKGROUND

        Mecca was convicted on October 23, 2008 of two counts of indecent assault and battery

on a child under fourteen, following a five-day jury trial in the Suffolk Superior Court.  Doc. No.

1-4 at 1.[1]  He was acquitted of a related rape charge.  Id. at 1 n.1.  The day after his conviction,

_____

        [1]Page numbers in citations to documents appearing on the docket in this matter are to the
pages printed in the ECF header.

Mecca was sentenced to two-to-two-and-a-half years in state prison, followed by three years of probation.  Doc. No. 1 at 1.

The charges stemmed from allegations made by the daughter of Mecca's former girlfriend.  Doc. No. 1-4 at 2.  The state court summarized the relevant facts as follows:

> In the fall of 2006,[2] the victim first disclosed to her mother that she had been sexually abused by [Mecca] when she was approximately 8 or 9 years old.  At the time of the disclosure, [Mecca] did not live with the victim.  She reported that the sexual abuse occurred when he had lived with them some four or five years earlier.  At the trial, the victim testified to two incidents where she had been sexually abused by [Mecca] and which supported his conviction on two of the indictments.

> She testified that on one occasion, [she] was watching television in her mother's room when [Mecca] entered and began touching her body.  [Mecca] did not let the victim move and threatened to kill her if she told her mother.  The victim testified that she did not tell anyone about the incident because [she] 'didn't want to die.'

> The victim testified that on another occasion she was lying in her grandmother's bed when [Mecca] came in and got on top of her body and held her down.  She testified that [Mecca] touched her vagina under her clothes.  [Mecca] stopped when the victim's grandmother knocked on the door.  When the victim's grandmother entered the room, the victim testified that she told her grandmother that nothing happened because [Mecca] said he would kill her if she told anyone.

> The morning following the second incident, the victim's mother took her to the hospital because she complained of abdominal pain and blood in her underwear.  [Mecca] accompanied them to the hospital.  The victim testified that the doctor asked [Mecca] to leave the room during the examination of the victim [and that h]e did so.  After he left, the doctor asked the victim if she had been sexually assaulted.  The victim responded that she had not.  According to the victim, [Mecca] was not present at the time but he was outside the examination room.  The victim's mother testified that [Mecca] not only insisted on going with them to the hospital but also stayed in the examination room for most of the time.

---

[2]The state court's finding as to when the victim's disclosure of the abuse occurred appears to be erroneous, as the record reflects the victim was interviewed about her allegations by sexual abuse specialists in April 2006.  See Supp. Answer Vol. I at 69.  This error, however, has no bearing on Mecca's claims or the state courts' disposition thereof.

Although he had gone out for a cigarette, the mother testified that he was present when the doctor asked the victim if she had been sexually assaulted.

There was testimony about the victim's relationship with [Mecca]. When he first moved in their relationship was a good one. However, according to the victim's mother's testimony, that relation began to deteriorate until the victim wanted nothing to do with [Mecca]. The victim also testified to other incidents where [Mecca] would rub against her body and touch her stomach, chest and breasts.

The victim did not disclose the sexual assaults to her mother until some four or five years later. She explained the delay was due to the threats made by [Mecca].

At trial, the evidence against [Mecca] consisted primarily of the victim's testimony. The delay in disclosing the sexual assaults was a significant issue affecting her credibility. The Commonwealth offered expert testimony explaining delayed disclosure and factors to be considered on this issue.

Id. at 2-3 (footnote omitted). The jury entered its verdict using special verdict forms on which it identified the conduct relied upon as the basis for each conviction as follows: "inappropriate kissing and fondling of the body" on one count of indecent assault and battery, and "forceful restraint [and] inappropriate fondling of genitalia" on the other. Id. at 3-4.

Mecca's timely direct appeal was stayed at his request so that he could pursue a post-conviction motion for a new trial. Doc. No. 12-1 at 10. In that motion, Mecca challenged comments made by the trial prosecutor in her opening statement and closing argument, evidence of uncharged conduct he claimed constructively amended the indictment, and defense counsel's decision not to introduce certain medical records at trial. Doc. No. 1-4 at 1. After the trial court denied that motion without a hearing, Id., the appeal was reopened, Doc. No. 12-1 at 11; Doc. No. 12-2 at 2. In his submissions to the Massachusetts Appeals Court, Mecca reiterated the three issues presented in his motion for a new trial and also challenged the trial court's decision not to hold a hearing on that motion. Doc. No. 3 at 1. On June 13, 2011, the Appeals Court affirmed both Mecca's conviction and the denial of his post-conviction motion. Doc. No. 1 at 2; Doc. No.

3

3 at 1.  Mecca's request for further review by the Supreme Judicial Court was summarily denied

on July 28, 2011.  Doc. No. 1 at 2; Doc. No. 1-6.

On October 26, 2012, Mecca filed the instant habeas petition.  Doc. No. 1.  In it, he

presents the following three claims: 1) "[t]he prosecutor's opening statement and closing

argument deprived the defendant of his due process rights"; 2) "[t]he constructive amendment of

the indictment deprived the defendant of his due process rights"; and 3) "[d]efense counsel

rendered constitutionally ineffective assistance by failing to introduce medical records that

would have undermined a key pillar of the Commonwealth's case."  Id. at 5-8.  As set forth

below, the first claim is procedurally defaulted, and the remaining two are meritless.

II.     DISCUSSION

A.      Legal Standards

Federal district courts may not grant a writ of habeas corpus unless they find that the state

court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States[,] or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."  28 U.S.C. § 2254(d).  Pursuant to this provision, state court decisions merit

substantial deference.  As the Supreme Court repeatedly has emphasized, such deference results

in a federal habeas corpus standard that is "difficult to meet," with the petitioner carrying a

heavy burden of proof.  Harrington v. Richter, 131 S. Ct. 770, 786 (2011); accord Cullen v.

Pinholster, 131 S. Ct. 1388, 1398 (2011); see Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013)

(emphasizing "formidable barrier" faced by federal habeas petitioner where claims already were

adjudicated in state court, and limiting relief to cases of "extreme malfunctio[ns]" by state criminal justice systems).  If a state court's decision "was reasonable, it cannot be disturbed" on habeas review.  Hardy v. Cross, 132 S. Ct. 490, 495 (2011) (per curiam).  When applying this strict standard, I must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003).

A state court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  For a habeas petitioner to prevail under this standard, the state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court.  Id. at 404-05; see Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).  The state court is not required to cite, or even have an awareness of, governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); cf. Richter, 131 S. Ct. at 785 ("§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference).

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08.  When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state

court's application of clearly established federal law was objectively unreasonable." Id. at 409.

An unreasonable application of the correct rule can include the unreasonable extension of that

rule to a new context where it should not apply, as well as an unreasonable failure to extend the

rule to a new context where it should apply. Id. at 407. It does not, however, include a decision

by a state court not "to apply a specific legal rule that has not been squarely established by [the

Supreme Court]." Knowles, 556 U.S. at 122. "The more general the rule, the more leeway

courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado,

541 U.S. 652, 664 (2004).

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement

to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); McCambridge v. Hall, 303 F.3d 24,

36-37 (1st Cir. 2002) (en banc). Rather, relief is available only where a state court's

"determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550

U.S. 465, 473 (2007); accord L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002); see also

Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam) (emphasizing that a habeas court "may not

overturn a state court decision . . . simply because the federal court disagrees with [it]"); Richter,

131 S. Ct. at 786-87 (requiring a petitioner to "show that the state court's ruling . . . was so

lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement").

    B.    <u>Prosecutorial Misconduct</u>

Mecca's first claim stems from comments made by the prosecutor in her opening

statement and closing argument explaining the victim's denial of sexual abuse during her April

2000 visit to the hospital for vaginal bleeding. Doc. No. 34 at 17. In both instances, the

prosecutor suggested the victim felt unable to disclose the incidents because Mecca was present when the treating physician inquired about sexual abuse.  See id. at 17-18 (quoting passages from the opening and the closing).  Mecca also faults the prosecutor for "repeatedly emphasiz[ing] that [the victim's] premenstrual bleeding took place the day after the alleged sexual assault," and for referring to such bleeding as an indicator of abuse.  Id. at 18.  According to Mecca, these comments "impermissibly strayed beyond the evidence admitted in the case" and amounted to due process violations.  Id. at 17.

    The Appeals Court rejected this claim on procedural grounds, noting Mecca failed to object to the relevant remarks during the trial.[3]  Doc. No. 3 at 1.  Engaging in a discretionary review of whether the comments "created a substantial risk of a miscarriage of justice," the Appeals Court determined: the opening and closing comments of the prosecutor were reasonably supported by the victim's mother's trial testimony; the prosecutor highlighted the timing of the vaginal bleeding but did not "expressly identify" it as evidence of sexual assault; and any causal connection between the bleeding and the victim's allegations was material to the rape charge, of which Mecca was not convicted.  Id. at 1-2; see Commonwealth v. Curtis, 632 N.E.2d 821, 825-26 (Mass. 1994).  Under these circumstances, the Appeals Court found no risk of a miscarriage of justice.  Because the Appeals Court disposed of this claim based on independent and adequate state procedural grounds – i.e., waiver arising from failure to object at trial – this Court may not

---

[3]Because the Supreme Judicial Court summarily denied review, this Court looks to the Appeals Court's decision for purposes of this habeas review.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010).

review it.[4]

A procedural default occurs, and federal habeas review generally is barred, when state courts refuse to address the merits of a petitioner's claim based on "a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)); see Boutwell v. Bissonnette, 66 F. Supp. 2d 243, 245 (D. Mass. 1999) (noting petitioners "cannot gain access to federal habeas review" where their "claims are dismissed by state courts for procedural reasons").  State-court waiver rules requiring petitioners to make contemporaneous trial objections in order to preserve errors for review constitute such "independent" and "adequate" state-law grounds.  Coleman, 501 U.S. at 729-30; see Horton v. Allen, 370 F.3d 75, 81 (1st Cir.

---

[4]Even if it were appropriate to reach the merits of this claim, Mecca has not established the Appeals Court's decision was contrary to Supreme Court precedent, nor that it rested on an unreasonable determination of the facts.  The relevant comments in the opening statement were reasonably grounded in what the prosecutor likely anticipated the victim's mother to testify to at trial, based on her testimony before the grand jury.  Supp. Answer Vol. I at 124-26.  Likewise, her comments in closing, although at odds with the victim's testimony regarding Mecca's presence at the hospital, were supported by the victim's mother's testimony on the same point.  Supp. Answer Vol. II at Tab 2, pp. 249-52.  Contrary to Mecca's suggestion, the record does not reflect that the prosecutor repeatedly or explicitly argued that the victim's vaginal bleeding was evidence of sexual assault; rather, she merely emphasized that the bleeding occurred the day after one alleged assault and focused on the hospital visit insofar as it was material to the victim's delayed disclosure.  Supp. Answer Vol. II at Tab 4, pp. 44-45.  Furthermore, the jury was instructed that their recollection of all evidence should control their determination of the facts, and that the statements of counsel were not evidence.  Id. at 53-54, 56.  As the state courts reasonably concluded, there is no violation of due process where a prosecutor's statements were based on the evidence.  Doc. No. 3 at 1; see Darden v. Wainwright, 477 U.S. 168, 181-823 (1986); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Dagley v. Russo, 540 F.3d 8, 16 (1st Cir. 2008).  In any event, Mecca was acquitted of the only charge for which evidence of vaginal trauma and bleeding would have been material – rape – undermining the argument that any implications by the prosecutor regarding the victim's vaginal bleeding as evidence of assault "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly, 416 U.S. at 643.

2004). Indeed, Courts in this jurisdiction "have held, with a regularity bordering on the monotonous, that" the rule invoked by the Appeals Court here "is an independent and adequate state procedural ground" barring federal habeas review. Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010). The Appeals Court's "discretionary miscarriage-of-justice review does not amount to a waiver of the state's contemporaneous objection rule," nor does it justify excusing a petitioner's procedural default. Id.

A petitioner may obtain federal habeas review of a procedurally defaulted claim only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. This requirement is grounded in the need for comity and designed to ensure state courts have an adequate opportunity to review a case on the merits. Smith v. Murray, 477 U.S. 527, 533 (1986). To demonstrate "cause" to excuse a default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the [relevant] procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Coleman, 501 U.S. at 753. The prejudice component of the procedural default analysis requires a showing that the alleged errors "worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982); accord McClesky v. Zant, 499 U.S. 467, 494 (1991).

In lieu of cause and prejudice, a petitioner may gain review despite his procedural default where he establishes a fundamental miscarriage of justice by demonstrating "actual innocence" via "new reliable evidence," such as "exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence" not presented at trial.  Schlup v. Delo, 513 U.S. 298, 324

(1995).  Such evidence warrants federal habeas review if it would render it more likely than not

that "no reasonable juror would find [the petitioner] guilty beyond a reasonable doubt."  House

v. Bell, 547 U.S. 518, 538 (2006).

In his submissions to this Court, Mecca does not acknowledge the procedural default of

his first claim.[5]  This is so despite the Appeals Court's explicit finding that the issue was subject

to only limited review as it was not properly preserved at trial, Doc. No. 3 at 1, and despite the

respondents' inclusion of procedural default as an affirmative defense in their Answer, Doc. No.

23 at 8.  Indeed, Mecca has made no effort to address the issue via a reply brief, even after the

respondents explicitly and thoroughly argued it in their opposition brief.  Doc. No. 40 at 9-12.

As a result, the record is devoid of any attempt by Mecca to demonstrate cause or prejudice for

his default, nor does it contain any new evidence to support a claim of innocence.  Similarly, the

undersigned's careful review of the record has uncovered no basis for concluding that the

defaulted claim is eligible for review under the relevant standards.  Accordingly, Mecca's first

claim provides no basis for granting the relief he seeks.

C.      Variance from Indictment

Next, Mecca argues his due process rights were violated during his trial when the

prosecutor argued and elicited testimony from the victim that Mecca had engaged in

inappropriate sexual contact with the victim on more than the two specific occasions charged in

---

[5]Mecca does acknowledge, in passing, defense counsel's failure to object to the relevant
comments, but does so only to suggest that the remarks were thus allowed "to have their full
prejudicial effect on the jury."  Doc. No. 34 at 22.  To the extent this is an effort to satisfy any
portion of the standard for overcoming a procedural default, it falls far short of what is required.

the indecent assault indictments returned by the state grand jury.  Doc. No. 34 at 25.

Specifically, he points to statements in the prosecutor's opening that Mecca "began to touch" the

victim, "would go into her room and . . . kiss her," and "would place his hands along her legs"

and touch her.  Id. (quoting opening statement).  He also cites the victim's testimony that Mecca

kissed her more than once, and "used to rub up all over [her.]"  Id. (quoting trial transcript).

According to Mecca, these references amounted to efforts by the Commonwealth to "broaden[]

the possible bases for conviction beyond those presented to the grand jury by making a case that

Mecca committed additional crimes during the relevant time period."  Id. at 25-26.

The Appeals Court concluded this claim was meritless,[6] reasoning that the comments at

issue were "clearly background information about the nature of the victim's dislike for [Mecca],

offered in response to the prosecutor's questions about why the relationship between the victim

and [Mecca] soured."  Doc. No. 3 at 2.  Additionally, the state court found "no danger that the

jury convicted the defendant of conduct for which he had not been indicted," noting the jury had

returned special verdict slips "specifically detail[ing] the conduct upon which [it] based [its]

decision."  Id.  The reasonable, if brief, analysis of the Appeals Court with respect to this claim

does not warrant relief under § 2254(d).

The flaw in Mecca's second claim is that it rests on an assumption that federal

constitutional criminal decisions applying the Fifth Amendment's Grand Jury Clause constitute

"clearly established" law binding state courts in the context of state criminal proceedings.  See

---

[6]It bears noting that Mecca's counsel failed to object at trial to either the comments by the prosecutor or the testimony of the victim which he now challenges.  However, the state courts elected not to dispose of this claim on such procedural grounds, and this Court will follow suit.

Doc. No. 34 at 24-26.  This is not so.  "Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."  Alexander v. Louisiana, 405 U.S. 625, 633 (1972); see Mack v. Dickhaut, No. 10-10856, 2012 WL 503683, at *14 (D. Mass. Jan. 25, 2012) (noting federal constitutional right to grand jury presentation does not apply to state prosecution); see also Smith v. Phillips, 455 U.S. 209, 221 (1982) (concluding federal courts have no supervisory authority over state grand jury proceedings).

As a result, Mecca's second claim is cognizable here only insofar as it alleges a violation of a due process requirement that has been deemed controlling in state criminal prosecutions under clearly established Supreme Court precedent.  Such precedent requires states to provide notice of the specific charges against a defendant and a chance to defend against those charges. Cole v. Arkansas, 333 U.S. 196, 201 (1948).  It also requires states choosing to utilize a grand jury system to ensure that those sitting on grand juries are fairly and not discriminatorily selected.  Vasquez v. Hillery, 474 U.S. 254, 264 (1986); Alexander, 405 U.S. at 628.  Mecca does not allege the latter sort of violation (i.e., unfairness in the selection of grand jurors). Insofar as his claim can be construed as one related to notice of the charges and an opportunity to defend against them, the grand jury transcripts reflect the same broad testimony regarding unspecified other incidents of Mecca touching the victim as were offered at trial.  See Supp. Answer Vol. I at 327-28.  Nothing prevented Mecca from countering that background information at trial through cross-examination of the victim or her mother, or through his own trial testimony.  Under these circumstances, there is no basis for finding Mecca's second claim

12

states a due process violation that is cognizable on federal habeas review and warrants relief.[7]

D.     Counsel Ineffectiveness

Mecca's final claim is a challenge to his trial counsel's failure to present medical records showing that the victim sought treatment in February 2002 for symptoms including vaginal bleeding.  Doc. No. 34 at 27-28.  According to Mecca, this evidence, from a time when Mecca no longer had contact with the victim, "undermined any theory that [the victim's] vaginal bleeding [in April 2000] corroborated her allegations."  Id. at 27.  Mecca urges that the evidence was of such significance that counsel's failure to introduce it at trial "illustrated an incompetence that deprived [him] of a fair trial."  Id. at 28.

The state courts rejected Mecca's claim, noting defense counsel "might well have had tactical reasons to not introduce the 2002 records," and to focus instead on other methods of impeaching the victim.[8]  Doc. No. 3 at 2.  To the extent the evidence was material to the cause of

---

[7]To the extent Mecca levies a challenge to the admission of "other crimes" or "bad act" evidence, Doc. No. 34 at 26, he never presented such a claim in the state courts, rendering it unexhausted and procedurally defaulted and, thus, beyond the power of this Court to review.  In any event, Mecca has not demonstrated that the brief references to other conduct at issue here – and reasonably construed by the state courts as "background evidence" offered to explain the victim's change in attitude toward Mecca – rise to the level of a federal due process violation.  Additionally, the prosecutor's closing argument focused exclusively on the two incidents underlying the indictments returned by the grand jury, see Supp. Answer Vol. II at Tab 4, pp. 41-44, and the state courts properly emphasized that the jury returned verdict forms on which they specifically identified conduct consistent with those two incidents as the conduct which formed the basis for their convictions, see Supp. Answer Vol. I at 167, 402.

[8]The Superior Court also reasoned that evidence of the April 2000 hospital visit was introduced to explain the victim's delayed disclosure, not to establish that Mecca caused her vaginal bleeding.  Doc. No. 1-4 at 8-9.  In this regard, the victim's mother testified at trial that Mecca was present for most of the April 2000 examination, confronted the doctor when she asked the victim about sexual abuse, and upon leaving the hospital praised the victim for not saying anything and offered a reward of ice cream.  Supp. Answer Vol. II at Tab 2, pp. 175, 251-53.

the victim's bleeding – something which the treating physician never definitively diagnosed – the state courts noted such relevance was limited to the rape charge, rather than the touchings that supported the two lesser indecent assault charges.  Doc. No. 3 at 2; Doc. No. 1-4 at 9.  Because Mecca was acquitted of the rape charge, the state courts concluded that Mecca could not show prejudice from any error by counsel with respect to the medical records.  Doc. No. 3 at 2; Doc. No. 1-4 at 9.  These findings are neither contrary to, nor an unreasonable application of, well-established Supreme Court precedent.

Clearly established federal law governing claims of counsel ineffectiveness is set forth in the familiar two-part test of Strickland v. Washington, 466 U.S. 668 (1984).  "First, the defendant must show counsel's performance was deficient," which requires showing "errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  Strickland, 466 U.S. at 687.  "Second, the defendant must show the deficient performance prejudiced the defense."  Id.  "Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."  Id.  Massachusetts state courts apply an equivalent test for ineffectiveness claims.  See Lynch v. Ficco, 438 F.3d 35, 48 (1st Cir. 2006) (calling the state standard in Commonwealth v. Saferian, 315 N.E.2d 878 (Mass. 1974), the "functional equivalent" of the Strickland test).

Counsel's ineffectiveness is measured objectively, considering all the circumstances.  See Strickland, 466 U.S. at 687-88.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Id.; accord Premo v. Moore, 131 S. Ct. 733, 740 (2011); Padilla v. Kentucky, 559 U.S. 356, 366 (2010).  Courts evaluating counsel's

performance must be "highly deferential" and "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances.  Strickland, 466 U.S. at 689; accord Knowles, 556 U.S. at 124.  Indeed, Supreme Court precedent requires a habeas court to "affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did," even where such reasons do not plainly appear in the record. Pinholster, 131 S. Ct. at 1403, 1407 (internal quotations omitted).

A strategic choice "made after thorough investigation of law and facts relevant to plausible options [is] virtually unchallengeable."  Strickland, 466 U.S. at 690; accord Knowles, 556 U.S. at 124.  "It is '[r]are' that constitutionally competent representation will require 'any one technique or approach.'"  Pinholster, 131 S. Ct. at 1407 (quoting Richter, 131 S. Ct. at 779). The relevant inquiry is not whether the petitioner's counsel was prudent, appropriate, or perfect, Burger v. Kemp, 483 U.S. 776, 794 (1987); rather, the focus is simply to ensure the proceedings resulting in the petitioner's conviction and sentence were fair, Strickland, 466 U.S. at 686.

To establish prejudice, a habeas petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694; accord Knowles, 556 U.S. at 127.  This, too, is an objective inquiry, which requires consideration of "the totality of the evidence before the judge or jury."  Strickland, 466 U.S. at 695-96.

Review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas."  Yarborough v. Gentry, 540 U.S. 1, 6 (2003); accord Titlow, 134 S. Ct. at 14; see Pinholster, 131 S. Ct. at 1403 ("We take a 'highly deferential' look at counsel's

performance through the 'deferential lens of § 2254(d).'" (internal citations omitted)).

Accordingly, if the state court addressed counsel's effectiveness – as the state courts did here – a

petitioner must show the state court's decision was objectively unreasonable.  Woodford v.

Visciotti, 537 U.S. 19, 25 (2002).  "[I]t is not enough to convince a federal habeas court that, in

its independent judgment, the state court erred in applying Strickland."  Bell v. Cone, 535 U.S.

685, 699 (2002); see also Richter, 131 S. Ct. at 778 ("A state court must be granted a deference

and latitude that are not in operation when the case involves review under the

Strickland standard itself.").  "When § 2254(d) applies, the question is not whether counsel's

actions were reasonable.  The question is whether there is any reasonable argument that counsel

satisfied Strickland's deferential standard."  Moore, 131 S. Ct. at 740.  A habeas petitioner must,

therefore, "do more than show that he would have satisfied Strickland's test if his claim were

being analyzed in the first instance."  Bell, 535 U.S. at 698-99.

    Applying these strict standards, Mecca's counsel-ineffectiveness claim fails.  First,

Mecca's defense at trial was to attack the victim's credibility, emphasize the delayed disclosure

of the allegations, and deny that any sexual assaults had occurred.  He did not claim that the

victim had been assaulted by some other individual.  As such, trial counsel reasonably could

have elected to avoid emphasizing evidence of prepubescent vaginal bleeding, as such evidence

might raise questions in the jurors' minds about the cause of such bleeding and distract from

counsel's other efforts to impeach the victim (e.g., by highlighting her failure to report the

allegations when they occurred to others present in the home or to medical providers, and by

focusing on inconsistencies in her testimony and her inability to recall various details about the

incidents).  Under these circumstances, Mecca has not demonstrated that prevailing professional

norms would require a reasonable attorney to introduce evidence of a hospital visit two years after the relevant allegations.

Even if counsel's decision not to utilize such evidence was deficient, there is no basis for finding that use of the evidence would have caused the jury to reach a different decision here. Mecca was acquitted of rape – the charge which one might expect jurors to most directly tie to evidence of vaginal bleeding.  It is nearly impossible to imagine how evidence of the 2002 hospital visit would have any significant bearing on the victim's credibility or otherwise have undermined Mecca's convictions for indecent assaults based on inappropriately kissing and touching the victim two years earlier.  Viewing the case through the deferential lens of habeas review only underscores Mecca's failure to satisfy his burden of demonstrating entitlement to relief, as the state court's consideration and resolution of this issue was far from unreasonable. See Woodford, 537 U.S. at 25.  Accordingly, Mecca's counsel-ineffectiveness claim is meritless.

III.    CONCLUSION

For the foregoing reasons, I respectfully recommend Mecca's petition for a writ of habeas corpus be DENIED.[9]

---

[9]The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation.  The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72; 28 U.S.C. § 636(b); Habeas Corpus Rule 8(b).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to file timely objections will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).

_____/s/ Leo T. Sorokin_____
Leo T. Sorokin
Chief U.S. Magistrate Judge